---

(Clark County, Ohio, Probate Court.)
IN RE LIZZIE BRENNAN.

---

(1). A person entitled to the administration of an estate, will not be appointed where it appears that he has claim connected with the estate as distributee or otherwise antagonistic to heirs or legatees therein, or where there exists an animosity between him and the heirs that might lead to an improvident administration.

(2). In such case the court in the exercise of a sound discretion should appoint some one that will administer the estate in conformity to law and the best interest of all concerned.

(3) An administrator ought in all instances, be a person in whom all parties in interest have complete confidence, and whom they can, at all times, approach without embarrassment, to confer and consult in reference to the management of the trust.

(4). B. devised all his real estate to a trustee for the benefit of her two minor children; five months before her death, she gave to her mother $1000.00 in money to be used for her children; her personal estate was small, but sufficient to pay all her debts. Her husband denied the validity of the $1000.00 gift to her mother, and in order to secure his distributive share of the same, insisted that the same be turned over to an administrator. This and other matters caused much ill feeling between the husband and the family, relatives of his wife, and the trustee of his children.

Held, the husband is not a suitable person to receive the appointment of administrator of his wife's estate.

---

ROCKEL, J.

Luke Brennan, the husband of Lizzie Brennan, deceased, has made his application to this court to be appointed administrator of the estate of his late wife.

This is resisted by the trustee of his children on the ground, that from the facts and circumstances in the case, he is an unsuitable person, etc. Lizzie Brennan died testate. In her will she devised all her property to her sister Mary Kizer to hold in trust for her two children, Mary Brennan and Warren E. Brennan until the young-

er shall arrive at the age of 21 years, when it should be divided equally between them.

She made no mention or provision for her husband in her will. The property she had was largely inherited from her father. Her marriage was rather against the will of her father and his family. The court does not know that the husband ever accumulated anything.

Lizzie Brennan died seized of an undivided one-fourth interest in all the real estate owned by her father at the time of his death, subject to the dower interest of her mother. She had some household furniture, the ownership of which between herself and husband, seems to be in dispute, and about $500.00 to her credit in one of our banks. She left no debts other than those incurred during her last illness and her funeral expenses, in all amounting probably to $200.00. Sometime before her death, about five months, she gave to her mother $1000.00 to be expended by her mother for the use and benefit of her two children, legatees under her will.

The husband claims that this gift is invalid, and that the said one thousand dollars, is an asset of the estate of his deceased wife, and should be turned over and be distributed as such. There being no debts, upon distribution he would receive $400.00 of it, and the children the remaining $600.00. The contention over this $1000.00, and the fact that Mrs. Brennan gave her property in trust to her sister, for the benefit of her children, and in that manner deprived her husband of the control of the same, together with the fact that there was never an overcordial feeling existing between the parties, has caused a feeling of much bitterness to exist at this time.

It is such as would absolutely prohibit the direct transaction of any business of any kind whatever between the husband and the trustee of his children. I have no doubt that the one thousand dollars given to the grandmother of the legatees under the will of Lizzie Brennan will be by her properly applied to the use and benefit of said legatees.

If the same is collected by the administrator, there portion will be about $600.00, and thus it will be seen that this applicant for administration. in addition to the existence of a feeling of bitterness and hostility, in an indirect way, has a claim antagonistic to that of the heirs of his wife and the legatees under her will. He admits that one of the reasons for desiring that there be an administration over his wife's estate, is for the very purpose of recovering this $1000.00, and further that he intends to pursue and recover it if possible so to do.

One of the grounds upon which the trustee resists the appointment, is, that there are grave doubts whether this $1000.00 belongs to the estate of said Lizzie Brennan and can be recovered by an administrator; and that this applicant's interest and feel-

ing is such that it would deprive him of a fair consideration of the matter and that he might thus be led to plunge the estate into needless and expensive litigation, involving costs in event the litigation was fruitless, that would more than exhaust the small amount of personal estate and require the sale of real estate to meet the same, and thus do immeasurable injury to the heirs of the deceased and the beneficiaries under her will. And this is not an impossible result.

Under section 6005 the husband has the first right to administer upon the estate of his deceased wife, and the probate court has no right to deprive him of that right except for cause, (estate of Garrettson, Goebel Probate R. H., 87). Giauque however thinks that, because the court may remove an administrator or executor for habitual drunkenness, gross neglect of duty, incompetency, fraudulent conduct, removal from the state, or because there are unsettled claims or demands existing between him and the estate, which in the opinion of the court, may be the subject of controversy or litigation between him and the estate or persons interested therein, or any cause which in the opinion of the court renders it for the interest of the estate (sec. 5995), it is evident that the court is invested with the widest discretion as to who may be allowed to be such trustee, when the best interests of the estate may in any way suffer through such trustee, and that the inference is strong, if not irresistable, that if the court may remove such trustee for any of the causes mentioned, after the expense and trouble of getting him installed, such court may refuse to appoint one who immediately after such appointment, should be removed from the trust.''

(Giauque on Settlement of Estates, page 203). This is a logical conclusion but I am not sure that it states a rule to be followed in all instances. If the legislature would have intended to confer this broad discretion upon the court in considering the application for the appointment of an executor or administrator, it would be fair to presume that such provisions would have been placed in the statute providing for appointments, and not alone in a section providing for the removal of an existing administrator or executor. Then too, I think a different rule should apply to executors than to administrators. An executor receives his right to the appointment, by virtue of the will of the deceased.

A person has a right, while in sound mind and judgment, to make such disposition of his property as he chooses. This would carry with it the right to name such person as he might choose to carry into effect the provisions of his will and administer upon the estate.

It is fair to presume that a testator is better acquainted with his executor than the court; that he knows more of his qualifications that may fit him to carry into ex-

ecution the provisions of his will in the way that he desires. Strong reasons should exist therefore for not appointing one named in the will of a deceased person. They should be such incapacities as the statute and common law recognizes as making him incompetent. The rule as to administrators is more liberal and while there may not exist this broad discretion contended for by Giauque, in considering who are entitled to the appointment as administrators on the estate of deceased persons, there is a discretion resting in this court as to whether or not the person entitled to administration, is incompetent or evidently unsuitable to administer the trust.

It will be conceded that within the ordinary accepted meaning of the word, Mr. Brennan, is not incompetent; that is, he does not lack ability so far as the evidence shows to administer the trust; although it is not clear to distinguish what is included in "incompetency" as different from "unsuitability". They both mean an improper person to administer the trust.

But do the facts show him to be either incompetent or unsuitable? If he is an unsuitable person, it must be by reason of his antagonistic interest and the animosity existing between him and the trustee of his children. Ill feeling between the parties direct in interest in an estate has been held sufficient to refuse the appointment of either. In Drews' Appeal, 58 N. H., 320, it is said: "The word incapable ca· not be limited in its application to the mere case of mental or physical incapacity, but must be understood to include the idea of un fitness, unsuitableness.

The use of the word unsuitable in the second section of the statute referred to, and the remark of the court in Murry. Webster (24 N. H., 17) that the next of kin must be taken to be a suitable person, favor this construction. An interest that disqualifies one from fairly considering the interest and claims of another in the same matter, renders him unsuitable to be entrusted with its management, and a feeling of hostility, so intense as to cause one to resist with personal violence the claims and rights of others held in common with him, not only renders him unfit for, but also practically incapable of managing the common interest.

The law does not encourage a private feud. Neither of the contending parties should be entrusted with the power of administration, because there is reason that farther animosity would lead to an abuse of the trust. In Bridgeman v. Bridgeman (3 S. E. R., 582, W. Va., 1887), the applicant was asked if his relations with his brother were friendly or unfriendly, and he said "it would be considered unfriendly, because we have been lawing so much. So far as I am concerned, I have no ill feeling." Being asked if he would not bring another suit, as administrator if he had the appointment conferred, he said "I don't know for what, I don't know of

any suit, because if I get this appointment and he settles with me fair, I would end it."

In the opinion the court says: "But his claim that what estate his mother had left was given him, and the unfriendly feeling existing between him and his brother, who had applied, was perhaps the reason why the court did not appoint him. * * * It seems to me the hostility of this non-resident distributee, even had he been a resident of this state, would have justified the court in refusing to appoint him". This case is very much like the one at bar. If the grandmother, Mrs. Kizer, will turn over to the administrator the $1000.00 she holds instead of using it for the benefit of her grandchildren, as directed by their mother, his wife, there will be no suit. But if she does not there will be. It is true Mrs. Kizer is not directly interested in the estate of her daughter Mrs. Brennan, but as the grandmother of her children she is certainly interested in their welfare. In estate of Pike, 45 Wisconsin, 391, it was held to be sufficient to remove an executor where at the time of the filing of the application there was and still continues to be an acrimoniously hostile feeling between the executor and the legatees which intercepts and prevents such a management and husbanding of the estate, as prudence, sound policy and the interests of the devisees and creditors require. So in the case at bar, there is danger to these minor devisees under the will of Mrs. Brennan that their estate might be largely depreciated by reason of the hostility existing between their father and their grandmother and trustee, were he to receive the appointment as administrator.

These minors are the special wards of this court, and it owes a duty to them to make no appointment that might possibly result to their injury. In a controversy over this $1000.00 they are sure to be the losers. If the administrator succeeds in recovering it, they will lose at least $400.00 of it. If he loses his suit, as legatees under their mother's will, they will be entitled to a less share by reason of the costs incurred. They are therefore in the highest degree interested that no frivolous suit be brought or expensive litigation incurred.

In Pickering v. Pendexer, 56 N. H., 71, it is said "If John L. Pickering was a suitable person, he would seem to be entitled to the appointment. That ordinarily he would be regarded as a suitable person is not denied; but it is said that he has interests adverse to the heirs and the creditors, and therefore could not properly discharge the trust, and we are inclined to think this objection to him to be well founded. It would seem that he asserts a claim to a considerable portion of the land in the possession of the deceased at his death, and that this claim is controverted by her heirs, and it may be the duty of the administrator to contest this claim or at least to investigate it thoroughly and

determine fairly whether it ought or ought not to be contested: and for neither of these duties would he be a suitable person. It is argued by his counsel that he must give bond for the faithful discharge of all his duties, and that is true: and yet we think it would not be a sound exercise of discretion to appoint a person whose interest is clearly opposed to the persons for whom he acts."

The words just quoted are applicable to this cause. The only person for whom the administrator should act, there being no creditors, are the husband, and if he were administrator, for himself, and these two minor legatees. And these legatees surely sustain such relation to this $1000.00 in controversy, that they should have a disinterested administrator, one who would "at least investigate the claim thoroughly and determine fairly whether it ought or ought not to be contested."

An administrator ought in all instances be one in whom all parties in interest have complete confidence, and whom they can approach at all times, without embarrassment to confer and consult in reference to the management of the trust.

As remarked by the court in Drew's Appeal before herein quoted from, the law does not encourage a private feud and as a general rule it may be said that the appointment of one mixed up in a family quarrel, embarrasses the management of the trust and all persons connected therewith, and the probate court ought in all such cases to have an absolute discretion in the refusal to make an appointment of that kind.

From all the facts and circumstances of this case, the peculiar interest and position of the minor legatees, I am of the opinion that in the exercise of a sound discretion, this court is warranted in finding that the applicant is evidently unsuitable to receive the appointment as administrator of his wife's estate, and his application will therefore be refused.

The next of kin being incompetent by reason of minority, and unsuitable for the same reasons that the applicant is, the court will appoint a suitable person, suggested by the parties and agreed to by all, or if they are unable to agree upon some one, the court will make the selection.

James Johnson, Jr., for applicant.

F. M. Hagan, for trustee.